**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LLOYD'S SYNDICATE No. 1225,<br><br>Plaintiff,<br><br>vs.<br><br>GREAT AMERICAN INSURANCE COMPANY and GREAT AMERICAN E & S INSURANCE COMPANY,<br><br>Defendants. | Civil Action No. 1:26-cv-9492 |

**PETITION TO COMPEL ARBITRATION AND COMPLAINT**

1. Plaintiff Lloyd's Syndicate No. 1225 ("AEGIS London") brings this action to compel arbitration of disputes concerning reinsurance contracts (the "Reinsurance Contracts") with Great American Insurance Company ("GAIC"). Alternatively, if the Court concludes that GAIC is not obligated to arbitrate the parties' disputes, AEGIS London asks that the Court adjudicate the merits of its claims for rescission and breach of the Reinsurance Contracts.

**PARTIES**

2. Plaintiff AEGIS London – Lloyd's Syndicate No. 1225 – is an underwriting syndicate administered by AEGIS Managing Agency Limited. For relevant years of account, AEGIS London has a single corporate member, AEGIS Electric & Gas International Services Limited, which is organized under the laws of England and Wales. AEGIS London has its principal place of business in London, England. AEGIS London is a citizen and subject of the United Kingdom for purposes of 28 U.S.C. § 1332(a)(2).

3. Defendant Great American Insurance Company—GAIC—is a corporation organized under the laws of the State of Ohio, with its principal place of business in Cincinnati, Ohio. GAIC is a citizen of Ohio for purposes of diversity jurisdiction.

4. Defendant Great American E & S Insurance Company ("Great American E&S") is a corporation organized under the laws of the State of Ohio, with its principal place of business in Cincinnati, Ohio. Great American E&S is a citizen of Ohio for purposes of diversity jurisdiction.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over AEGIS London's Petition to Compel Arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 4, 203. The Reinsurance Contracts fall under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards because one of the parties, AEGIS London, is a foreign citizen.

6. Alternatively, in the event that AEGIS London's Petition to Compel Arbitration is denied, this Court has subject matter jurisdiction over AEGIS London's claims under 28 U.S.C. § 1332(a)(2) because this action is between a citizen of a foreign state (AEGIS London, a subject of the United Kingdom) and citizens of a state (GAIC and Great American E&S, citizens of Ohio), and the amount in controversy exceeds $75,000, exclusive of interest and costs. GAIC demands payment from AEGIS London of millions of dollars under the Reinsurance Contracts.

7. Great American E&S issued the insurance policies ceded to the Reinsurance Contracts. In communications with AEGIS London, Great American has described Great American E&S as the "cedent" under the Reinsurance Contracts. GAIC and Great American E&S are collectively referred to as "Great American."

8. Great American is subject to personal jurisdiction in New York because this action arises out of Great American's transaction of business in New York, including:

a. GAIC has registered with the New York Department of Financial Services to write insurance policies, and the policies ceded to the Reinsurance Contracts are governed by New York law.

b. Great American has represented to AEGIS London that it sought regulatory guidance from the New York Department of Financial Services concerning the insurance policies ceded to the Reinsurance Contracts.

c. Great American's agent, PIUS, also transacted substantial business on Great American's behalf in New York and met in person with AEGIS London's underwriter in New York on several occasions to discuss the Reinsurance Contracts.

d. Great American E&S sued PIUS's owner/successor-in-interest, Arthur J. Gallagher & Co. ("Gallagher"), in this Court for, among other things, failing to properly underwrite the insurance policies ceded to the Reinsurance Contracts. According to Great American E&S, it and Gallagher consented to the exclusive jurisdiction of New York courts over their dispute, and a substantial part of the events or omissions giving rise to Great American E&S's claims occurred in New York, and specifically involved Gallagher employees based in New York.

e. The Reinsurance Contracts are governed by New York law and authorize service of suit on AEGIS London in New York.

9. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

**PETITION TO COMPEL ARBITRATION**

10. AEGIS London and Great American Insurance Company—GAIC—are parties to a Variable Quota Share Reinsurance Contract dated November 23, 2021 (the "2021 Reinsurance Contract"). Great American E&S is not a party to the 2021 Reinsurance Contract. Subject to its various terms, the 2021 Reinsurance Contract applies to lender collateral residual value

insurance ("LCRV") policies issued pursuant to the PIUS program guidelines between October 1, 2021 and January 1, 2023.

11. AEGIS London and Great American Insurance Company—GAIC—are parties to a Variable Quota Share Reinsurance Contract dated May 1, 2023 (the "2023 Reinsurance Contract"). Great American E&S is not a party to the 2023 Reinsurance Contract. Subject to its various terms, the 2023 Reinsurance Contract applies to LCRV policies issued pursuant to the PIUS program guidelines between May 1, 2023 and May 1, 2024.

12. Among other things, both Reinsurance Contracts provide that they are being entered into in "consideration of the mutual covenants herein contained and in reliance on statements made and information furnished by the Company to the Reinsurer . . . ."

13. Both Reinsurance Contracts contain materially identical arbitration clauses covering "any dispute" between GAIC and a reinsurer such as AEGIS London "arising out of the interpretation, performance or breach of this Contract, including the formation or validity thereof."

14. The Reinsurance Contracts refer to arbitration upon "mutual consent" of the parties but also indicate that arbitration is mandatory, referring to "the obligations of the parties to arbitrate their disputes as provided for in the Arbitration Article." The Reinsurance Contracts contain a forum selection clause, which states it is "intended as an aid to compelling arbitration or enforcing such arbitration or arbitral award, not as an alternative to the Arbitration Article for resolving disputes arising out of this Contract."

15. By letter dated August 7, 2026, AEGIS London notified Great American that it had rescinded the Reinsurance Contracts because of Great American's misrepresentations, breach of the duty of utmost good faith, and breaches of the Contracts. In its August 7, 2026 rescission notice, AEGIS London tendered payment to Great American of the net premiums

received under both Reinsurance Contracts and requested Great American's account details for wiring the funds.

16. Great American responded by letter denying any breach of the Reinsurance Contracts or grounds for rescinding them and rejecting the tendered return of premiums.

17. In communications with AEGIS London, Great American has indicated that it is not willing to arbitrate the parties' dispute at this time and would prefer to delay resolution of the parties' dispute.

18. On October 29, 2026, AEGIS London formally demanded that Great American arbitrate the parties' dispute.

19. To date, Great American has failed or neglected to arbitrate the dispute between the parties.

**COMPLAINT**

20. The Reinsurance Contracts are intended to apply to LCRV policies issued by Great American as part of a program administered by its agent, PIUS. Under the PIUS program, Great American E&S issued insurance policies that purportedly insured against the decrease in value of assets used to secure the repayment of loans extended to borrowers with significant intellectual property assets. Great American E&S issued the policies to UMB Bank, National Association ("UMB Bank"), which had arranged the issuance of loans in the form of secured notes and served as indenture trustee for the noteholders. The borrowing companies were supposed to be engaged in high-technology businesses and were supposed to provide as collateral all of their property, including their purportedly valuable intellectual property.

21. The Reinsurance Contracts contain broad confidentiality clauses limiting disclosure of certain documents and information provided to AEGIS London. Additionally,

Great American insisted that AEGIS London execute a non-disclosure agreement before providing certain information concerning the Reinsurance Contracts.

22. Great American E&S appointed PIUS as its agent and authorized it to underwrite LCRV policies which were to be ceded to the Reinsurance Contracts. On information and belief, Great American was aware that PIUS was making representations about the PIUS program to reinsurers and authorized this activity. AEGIS London reasonably believed, based on Great American's representations and the surrounding circumstances, that Great American authorized PIUS to make such representations.

23. Great American appointed Bermuda Brokers Limited ("Bermuda Brokers") as its broker of record with respect to the Reinsurance Contracts and authorized Bermuda Brokers to solicit the participation of reinsurers, including AEGIS London, on the Reinsurance Contracts.

24. Great American, through its agents PIUS and Bermuda Brokers, made representations to AEGIS London concerning, among other things, the LCRV policies to be ceded to the Reinsurance Contracts, the kinds of loans that would be insured, the nature of the collateral securing those loans and subject to the policies, how the policies would be underwritten, and the absence of losses on policies in the PIUS program. These representations were communicated through Joseph Agiato and Hugh O'Donnell to AEGIS London's underwriter for differentiated underwriting and other AEGIS personnel for the purpose of inducing AEGIS London to subscribe to the Reinsurance Contracts. The representations were made orally and in writing on or about October 18 and 25, 2021, and November 1 and 9, 2021.

25. On or about December 9, 2021, AEGIS London subscribed to the 2021 Reinsurance Contract in reliance on the various representations.

26. On or about November 4 and 14, 2022, December 19, 2022, January 9, 2023, March 14, 2023, May 16, 2023, June 18, 2023, June 20, 2023, and June 27, 2023, Great American, through Agiato and O'Donnell, made further oral and written representations to AEGIS London's underwriter concerning the LCRV policies ceded and to be ceded to the Reinsurance Contracts, the kinds of loans that would be insured, the nature of the collateral securing those loans and subject to the policies, how the policies would be underwritten, and the absence of losses on policies in the PIUS program. These representations were substantially similar to those made to AEGIS London in the fall of 2021 and described in Paragraph 24.

27. These representations were false. In November 2022, Great American E&S issued an insurance policy that did not conform to these representations (the "Non-Conforming Policy"). The Non-Conforming Policy also did not satisfy the definition of "Covered Policies" under the 2021 Reinsurance Contract.

28. Great American ceded the Non-Conforming Policy to the 2021 Reinsurance Contract by way of a quarterly bordereau in February 2023, which did not disclose the circumstances under which the Policy was issued or that it was inconsistent with Great American's representations and the 2021 Reinsurance Contract.

29. Great American was aware that the Non-Conforming Policy and the circumstances of its issuance were inconsistent with its prior representations to AEGIS London but did not disclose these facts to AEGIS London at any time before June 29, 2023.

30. Great American's omissions and misrepresentations were material to AEGIS London. If Great American had disclosed to AEGIS London the circumstances of the Non-Conforming Policy – which Great American was obligated to do – AEGIS London would have

objected to the cession of the Non-Conforming Policy and would not have participated on the 2023 Reinsurance Contract.

31. On or about June 29, 2023, AEGIS London subscribed to the 2023 Reinsurance Contract in reliance on the representations described in Paragraph 26 and on Great American's failure to disclose as set forth in Paragraphs 27-29.

32. Great American and its agent, PIUS, also failed to properly underwrite the LCRV policies ceded to the Reinsurance Contracts. Because Great American granted underwriting authority to PIUS, it is responsible for PIUS's underwriting submissions and PIUS's knowledge is imputed to Great American. Great American E&S also knowingly issued multiple policies that did not conform to Great American's own underwriting criteria.

33. Great American and PIUS's evaluation of the financial condition and creditworthiness of the borrowing companies receiving insured loans proved to be grossly incomplete and inaccurate. These companies' collateral had far too little commercial value to repay the millions of dollars that the noteholders were lending to them.

34. PIUS prepared underwriting submissions that were incomplete and materially inaccurate. PIUS underplayed the borrowing companies' problems and omitted key facts that contradicted PIUS's representations concerning the companies' financial condition. Based on the information known at the time of underwriting, no reasonable person would conclude that PIUS had conducted a meaningful, diligent, and independent evaluation of the borrowing companies' respective future prospects and abilities to repay their substantial, multi-million-dollar loans.

35. Great American also abdicated its underwriting responsibilities and which it had represented to AEGIS London that it would undertake. Great American was entirely capable of discovering—and subsequently did discover—the many inaccuracies and omissions in PIUS's

underwriting submissions. At the time of underwriting, Great American was aware of red flags indicating that some LCRV policies did not conform to its underwriting guidelines. Further, a simple internet search would have revealed many of PIUS's underwriting submissions were inaccurate or misleading. On information and belief, Great American ignored these red flags and failed to meaningfully review and scrutinize PIUS's underwriting submissions.

36. As a result of Great American and PIUS's underwriting failures, there have been multiple substantial losses and claims by UMB Bank against Great American E&S under LCRV policies ceded to the Reinsurance Contracts. GAIC has billed AEGIS London claiming that AEGIS London owes a portion of the amounts that Great American has paid in expenses and in settlement of claims under the LCRV policies.

37. AEGIS London has denied liability for Great American's billings and rescinded the Reinsurance Contracts as set forth in Paragraph 15.

## CAUSES OF ACTION

### COUNT I
### (Rescission – 2023 Reinsurance Contract)

38. AEGIS London repeats and realleges the allegations in Paragraphs 1 through 37 as if fully set forth herein.

39. Under New York law, which governs both Reinsurance Contracts, GAIC American owes AEGIS London a duty of utmost good faith (*uberrimae fidei*) and was obligated to disclose to AEGIS London all material facts bearing on the risk at the time the risk was placed and to act reasonably and in good faith in underwriting, ceding, and administering insurance policies ceded to the Reinsurance Contracts. If Great American E&S were determined to be the cedent and a party to the Reinsurance Contracts, it would owe the same duty.

40. Great American made misrepresentations and failed to disclose facts to AEGIS London prior to its subscription to the 2023 Reinsurance Contract.

41. Great American's misrepresentations and non-disclosures breached its duty of utmost good faith to AEGIS London.

42. AEGIS London relied on Great American's misrepresentations and omissions in subscribing to the 2023 Reinsurance Contract.

43. Great American's misrepresentations and omissions were material. Had AEGIS London known the truth that was misrepresented, or been aware of the omitted facts, it would not have subscribed to the 2023 Reinsurance Contract or would have done so on different terms.

44. Great American also breached its duty of utmost good faith by failing to properly underwrite the LCRV policies ceded to the 2023 Reinsurance Contract.

45. As a result of Great American's breaches, AEGIS London was entitled to rescind the 2023 Reinsurance Contract.

46. AEGIS London provided prompt and timely notice of rescission to Great American after learning sufficient facts about Great American's misrepresentations, non-disclosures, and breaches.

47. AEGIS London properly tendered all of the consideration it received under the 2023 Reinsurance Contract.

48. AEGIS London's notice of rescission effected a valid rescission at law of the 2023 Reinsurance Contract.

49. Alternatively, the 2023 Reinsurance Contract should, in equity, be rescinded.

**COUNT II**
**(Breach of Contract – 2021 Reinsurance Contract)**

50. AEGIS London repeats and realleges the allegations in Paragraphs 1 through 37 as if fully set forth herein.

51. To the extent that the 2021 Reinsurance Contract is a binding and enforceable agreement, GAIC has committed material breaches of that contract such that it cannot seek to enforce the terms thereof. If Great American E&S were determined to be the cedent and a party to the 2021 Reinsurance Contract, it would also have materially breached the Contract.

52. GAIC breached the 2021 Reinsurance Contract by ceding the Non-Conforming Policy to the Contract. The Non-Conforming Policy was not an LCRV policy covered by the 2021 Reinsurance Contract because it did not satisfy the definition of such a policy.

53. Great American further breached the 2021 Reinsurance Contract by failing to underwrite the LCRV policies ceded to that contract in a manner consistent with the representations made and information furnished by Great American to AEGIS London at the time that AEGIS London had entered into the 2021 Reinsurance Contract.

54. Great American breached its duty of utmost good faith by failing to meaningfully underwrite and administer the LCRV policies ceded to the 2021 Reinsurance Contract. Great American repeatedly and knowingly issued LCRV policies that did not satisfy its own underwriting criteria. Great American insured multiple high-risk loans and consistently overvalued borrowing companies' collateral. This resulted in multiple substantial losses and claims under the LCRV policies.

55. The foregoing conduct constitutes material breaches of the 2021 Reinsurance Contract by Great American.

56. Because of Great American's material breaches of its obligations under the 2021 Reinsurance Contract, Great American cannot seek to enforce the terms of the 2021 Reinsurance Contract, AEGIS London is not obligated to indemnify Great American under the 2021 Reinsurance Contract, and AEGIS London is entitled to recover its damages arising from Great American's breaches.

**COUNT III**
(**Breach of Contract – 2023 Reinsurance Contract – in the Alternative**)

57. AEGIS London repeats and realleges the allegations in Paragraphs 1 through 37 as if fully set forth herein.

58. As an alternative to rescission under Count I, and to the extent that the 2023 Reinsurance Contract is a binding and enforceable agreement, GAIC has committed material breaches of that contract such that it cannot seek to enforce the terms thereof. If Great American E&S were determined to be the cedent and a party to the 2023 Reinsurance Contract, it would also have materially breached the Contract.

59. Great American breached the 2023 Reinsurance Contract by failing to underwrite the LCRV policies ceded to that contract in a manner consistent with the statements made and information furnished by Great American to AEGIS London at the time that AEGIS London had entered into the 2023 Reinsurance Contract.

60. Great American breached its duty of utmost good faith by failing to meaningfully underwrite and administer the LCRV policies ceded to the 2023 Reinsurance Contract. Great American repeatedly and knowingly issued LCRV policies that did not satisfy its own underwriting criteria. Great American insured multiple high-risk loans and consistently overvalued borrowing companies' collateral. This resulted in multiple substantial losses and claims under the LCRV policies.

61. The foregoing conduct constitutes material breaches of the 2023 Reinsurance Contract by Great American.

62. Because of Great American's material breaches of its obligations under the 2023 Reinsurance Contract, Great American cannot seek to enforce the terms of the 2023 Reinsurance Contract, AEGIS London is not obligated to indemnify Great American under the 2023 Reinsurance Contract, and AEGIS London is entitled to recover its damages arising from Great American's breaches.

**COUNT IV**
(**Declaratory Judgment – 2021 Reinsurance Contract**)

63. AEGIS London repeats and realleges the allegations in Paragraphs 1 through 37 as if fully set forth herein.

64. GAIC breached the 2021 Reinsurance Contract and the duty of utmost good faith contained therein. If Great American E&S were determined to be the cedent and a party to the 2021 Reinsurance Contract, it would also have materially breached the Contract and the duty of utmost good faith contained therein.

65. As a result of Great American's breaches, AEGIS London is discharged from liability under the 2021 Reinsurance Contract.

66. An actual, justiciable controversy exists between AEGIS London and Great American regarding AEGIS London's obligations, if any, under the 2021 Reinsurance Contract.

67. AEGIS London is entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201 that it has no obligation to pay Great American for any current or future billings under the 2021 Reinsurance Contract, and that any such billings are void and without force or effect.

**COUNT V**
**(Declaratory Judgment – 2023 Reinsurance Contract – in the Alternative)**

68. AEGIS London repeats and realleges the allegations in Paragraphs 1 through 37 as if fully set forth herein.

69. As an alternative to rescission under Count I, and to the extent that the 2023 Reinsurance Contract is a binding and enforceable agreement, GAIC breached the 2023 Reinsurance Contract and the duty of utmost good faith contained therein. If Great American E&S were determined to be the cedent and a party to the 2023 Reinsurance Contract, it would also have materially breached the Contract and the duty of utmost good faith contained therein.

70. As a result of Great American's breaches, AEGIS London is discharged from liability under the 2023 Reinsurance Contract.

71. An actual, justiciable controversy exists between AEGIS London and Great American regarding AEGIS London's obligations, if any, under the 2023 Reinsurance Contract.

72. AEGIS London is entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201 that it has no obligation to pay Great American for any current or future billings under the 2023 Reinsurance Contract, and that any such billings are void and without force or effect.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lloyd's Syndicate No. 1225 respectfully requests that this Court enter an order compelling Great American to arbitrate the parties' disputes pursuant to the terms of the arbitration clauses in the Reinsurance Contracts.

Alternatively, in the event that the Court finds that Great American is not obligated to arbitrate the parties' disputes, Plaintiff Lloyd's Syndicate No. 1225 respectfully requests that this

Court enter judgment in its favor and against Defendants GAIC and Great American E&S as follows:

(a) As to Count I, recognizing or ordering the rescission of the 2023 Reinsurance Contract;

(b) Alternatively, as to Count III, finding that GAIC or Great American E&S breached the 2023 Reinsurance Contract and the duty of utmost good faith contained therein and awarding AEGIS London damages in an amount according to proof;

(c) Alternatively, as to Count V, finding and declaring that AEGIS London has no obligation to pay GAIC or Great American E&S for any current or future billings under the 2023 Reinsurance Contract;

(d) As to Count II, finding that GAIC or Great American E&S breached the 2021 Reinsurance Contract and the duty of utmost good faith contained therein and awarding AEGIS London damages in an amount according to proof;

(e) As to Count IV, finding and declaring that AEGIS London has no obligation to pay GAIC or Great American E&S for any current or future billings under the 2021 Reinsurance Contract;

(f) Awarding AEGIS London its costs and disbursements incurred in this action; and

(g) Granting such other and further relief as the Court deems just and proper.

*/s/ Joseph K. Scully*
Joseph K. Scully (ID #JS0242)
Christopher A. Klimmek (ID #437489)
Day Pitney LLP
225 Asylum Street
Hartford, CT 06103
(860) 275-0100
jkscully@daypitney.com
cklimmek@daypitney.com

*Attorneys for Plaintiff Lloyd's Syndicate No. 1225*